# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**BRYAN TROEGEL**

**CIVIL ACTION**

**VERSUS**

**NO. 18-1051-JWD-EWD**

**PERFORMANCE  ENERGY  SERVICES, LLC**

## RULING AND ORDER

This matter comes before the Court on cross motions related to an arbitration award.  The first is the *Motion to Lift Stay, Confirm Arbitration Award and Enter Judgment in favor of Troegel* (Doc. 14) ("*Motion to Confirm*") filed by Plaintiff Bryan Troegel ("Plaintiff" or "Trogel"). Defendant Performance Energy Services, LLC, ("PES" or "Defendant") opposes this motion (Doc. 19), and Plaintiff has filed a reply (Doc. 22).  The second is the *Motion to Vacate, Modify, and/or Correct Arbitration Award* (Doc. 18) ("*Motion to Vacate*") filed by PES.  Plaintiff opposes this motion (Doc. 21), and Defendant has filed a reply (Doc. 23).  Oral argument is not necessary.  The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule.

For the following reasons, the *Motion to Vacate* is denied, and the *Motion to Confirm* is granted in part and denied in part.  Specifically, the *Motion to Confirm* is denied with respect to Plaintiff's request for additional attorneys' fees incurred to enforce the arbitration award, as the arguments made by Defendant in its *Motion to Vacate* were not frivolous.  In all other respects, this motion is granted; the arbitration award shall be confirmed in full, and the Court will enter judgment in Plaintiff's favor in the amount of $658,281.47, plus legal interest until paid.

## I.    Relevant Background

### A.  The Employment Contract and Pre-Arbitration Litigation

On October 24, 2018, Plaintiff filed suit against PES in state court. (*Pet. for Damages & Declaratory J.* ("*Pet.*"), Doc. 1-1 at 1.)  The suit related in part to Section 2.02 of Plaintiff's employment contract with PES that provided in relevant part:

> Company may terminate this Agreement at any time without cause; however, should Company terminate the Agreement without cause, Company shall pay to Employee a lump sum severance equal to twice the Employee's base annual salary and will pay to or on behalf of Employee COBRA premiums as regards health insurance up until such time as required by applicable state or federal law.

(*Id.* ¶ 5, Doc. 1-1 at 3; *Employment Agreement by and between [PES] and Bryan Troegel* ("*Employment Contract*"), Doc. 18-2 at 3.)  Plaintiff alleged that he had reported certain misconduct by a superior and that he was subsequently fired without cause. (*Pet.* ¶¶ 10–11, Doc. 1-1 at 4.)  Plaintiff claimed that PES conditioned his getting his severance and COBRA premiums on signing a Confidential Severance Agreement and Release ("Release"), "which provide[d] for a lump sum severance payment, payment of COBRA premiums for 18 months, and a non-disclosure provision and full release of all claims." (*Id.* ¶¶ 12–13, Doc. 1-1 at 4.)  Plaintiff alleged that PES breached its contract with him by failing to tender the severance benefits and COBRA premiums as required the Employment Contract. (*Id.* ¶¶ 17–22, Doc. 1-1 at 5–6.)  Plaintiff also asserted a cause of action for wrongful termination and sought a declaration that the covenant not to compete in the Employment Contract was unlawful and unenforceable. (*Id.* ¶¶ 23–32, Doc. 1-1 at 6–8.)  On November 29, 2018, PES removed the suit to this Court. (Doc. 1.)

On January 4, 2019, the parties filed a *Joint Motion to Continue Scheduling Conference and Extend Relevant Deadlines* (Doc. 6) explaining that they were in the process of trying to

amicably resolve the matter. (*Id.*)  They represented that a mediation was scheduled for February 20, 2019. (*Id.*)

On March 7, 2019, the parties filed a *Joint Notice of Settlement* (Doc. 8) advising the Court that they agreed to settle. (*Id.*)  They asked that the case be removed from the docket and that they be allowed forty-five days to consummate the settlement documents, after which time a stipulation of dismissal would be filed. (*Id.*)

On April 17, 2019, the parties filed a *Joint Notice* (Doc. 10) advising the Court that they were unable to come to terms on a formal settlement agreement. (*Id.*)   They moved to reopen the case. (*Id.*)

On the same day, the parties filed a *Joint Motion to Stay Action and Refer All Claims to Arbitration* (Doc. 11) based on the arbitration clause contained in Section 3.02 of the Employment Contract, which provided in relevant part:

> In the event litigation is commenced by any party to these agreements, Company and Employee agree to submit their claims to binding arbitration[.] . . . The arbitration shall be held in Houma, Louisiana or at a place mutually agreeable but within the State of Louisiana and shall be conducted under the Commercial Arbitration Rules of the American Arbitration Association in effect at the time that the demand for arbitration hereunder is made.  Louisiana substantive law shall apply.  The decision of the arbitrator shall be final, and binding on all parties.  The cost and expense of the arbitration shall be borne by the non-prevailing party.

(*Employment Contract*, Doc. 18-2 at 4.)  Two days later, the motion was granted, and the matter was stayed indefinitely while the parties sought to resolve their dispute through arbitration. (Doc. 13.)

### B.  The Arbitration

#### 1. The Demand for Arbitration, Answer, and Answer to Counterclaim

On May 22, 2019, Plaintiff submitted his *Demand for Arbitration* (Doc. 18-2 at 12.)  The allegations largely mirrored those in his *Petition*.  Relevant here, when describing the severance agreement that PES tried to require Plaintiff to sign, Plaintiff wrote:

> This Confidential Severance Agreement  and Release of all Claims (the "Release") provided for a severance payment of $500,000, which was significantly less than two times Troegel's salary, payment of COBRA premiums for 18 months, and included a non-disclosure provision and full release of all claims.  Further, the Release stated that "the Severance Benefits are being provided in consideration for Employee's execution of this Agreement." . . .

> Since the terms of the Release did not adhere to Section 2.02 of Trogel's Employment Contract . . . , Trogel rejected the settlement offer set forth in the Release.

(*Demand for Arbitration* ¶¶ 12–13, Doc. 18-2 at 14.)

Plaintiff asserted three counts in his *Demand for Arbitration*.  Count 1 was for breach of contract and claimed that PES failed to tender the severance and COBRA benefits in accordance with the Employment Contract. (*Id.* ¶¶ 18–23, Doc. 18-2 at 14–15.)  Count 2 sought the invalidation of the covenant not to compete, and Count 3 claimed that PES' breach invalidated the covenant not to compete. (*Id.* ¶¶ 24–33, Doc. 18-2 at 15–16.)  Plaintiff prayed for, *inter alia*, an order for PES "to pay to Troegel the severance benefits and COBRA premiums as set forth in Section 2.02 of the Employment Contract[.]" (*Id.*, Doc. 18-2 at 16–17.)  Plaintiff also sought an award of attorneys' fees. (*Id.*, Doc. 18-2 at 17.)

On July 17, 2019, PES submitted an answer to the *Demand for Arbitration.* (*Answering Statement and Counterclaim* ("*Answer*"), Doc. 18-2 at 18–24.)  PES denied Plaintiff's claims and asserted two counterclaims for breach of the covenant not to compete and for unfair trade practices. (*Id.*)  Critically, PES sought an award of attorneys' fees. (*Id.*, Doc. 18-2 at 23.)

4

On June 28, 2019, Plaintiff filed his *Answer and Affirmative Defenses to Counterclaim* ("*Answer to Counterclaim*") (Doc. 18-2 at 25–29.)  Plaintiff denied Defendant's counterclaims and prayed for, among other things, "the severance benefits and COBRA premiums set forth in Section 2.02 of the Employment Contract, all foreseeable and unforeseeable damages due to the bad faith breach of the Employment Contract by PES" and fees and costs, including "all attorneys' fees incurred by Troegel in connection with the instant arbitration proceeding[.]" (*Id.*, Doc. 18-2 at 28.)

## 2. Preliminary Hearings, Pre-Arbitration Discovery, and Pre-Hearing Briefing

On August 12, 2019, the Arbitrator, Michael W. McKay of the Stone Pigman law firm, conducted the first preliminary hearing. (*Report for Preliminary Hearing and Scheduling Order No. 1*, Doc. 18-2 at 31–32.)  McKay ordered PES to file a motion to conduct limited discovery describing the specific discovery it sought. (*Id.* ¶ 1, Doc. 18-2 at 31.)  The order also set the dates for the arbitration hearing as October 1–2, 2019. (*Id.* ¶ 3, Doc. 18-2 at 31.)

On August 28, 2019, McKay conducted a second preliminary hearing. (*Report for Preliminary Hearing No. 2 and Scheduling Order No. 2*, Doc. 18-2 at 33–34.)  The Arbitrator allowed a two-hour deposition of the Plaintiff "to be limited to [PES'] defense to the claim based upon its position that [Plaintiff's] termination was for cause." (*Id.* ¶ 1, Doc. 18-2 at 33.)  McKay further found that the claims under the Louisiana Unfair Trade Practices Act were beyond the scope of the arbitration clause. (*Id.*)  Exhibits were to be exchanged by October 25, 2019. (*Id.* ¶ 4, Doc. 18-2 at 33.)  The matter was also re-set for hearing for November 4–5, 2019. (*Id.* ¶ 3, Doc. 18-2 at 33.)

On October 28, 2019, the Arbitrator issued *Scheduling Order No. 3*. (Doc. 18-2 at 35–36.) This order was prompted because PES had learned of over twenty hours of audio recordings

Plaintiff had made of PES' personnel and other potential witnesses, and PES sought further discovery related to this. (*Id.*; PES' *Mem. in Supp. of Resp.'s Mot. to Postpone the Arbitration Hr'g and Renewed Mot. to Conduct Disc.*, Doc. 18-2 at 38–39.)   In denying Defendant's motion, McKay explained:

> It is critical to note that this is an arbitration, not a trial.  Arbitration is designed to be more expeditious and less costly than trials.  The major basis of this goal is the limitation of discovery.  Increased potential for surprise, when compared to a full trial process, is a natural outcome.

(*Scheduling Order No. 3*, Doc. 18-2 at 35–36.)  The Arbitrator noted that Plaintiff complied with the previous Scheduling Order by timely disclosing the evidence, that the matter was already continued once, and that PES' request was contrary to the underlying purpose of arbitration. (*Id.*, Doc. 18-2 at 35.)  The motion was thus denied, and no further discovery was allowed. (*Id.*, Doc. 18-2 at 36.)

On October 30, 2019, PES submitted *Respondent's Pre-Hearing Brief* (Doc. 18-2 at 104–110).  Defendant notes that it argued in that filing that attorneys' fees could not be recovered by Plaintiff for bad faith damages for a breach of contract under La. Civ. Code art. 1997. (*Id.*, Doc. 18-2 at 108.)

### 3. The Arbitration Hearing and Post-Hearing Briefing

On November 4–5, 2019, the arbitration hearing was held at the offices of Stone Pigman in New Orleans. (*Award of Arbitrator*, Doc. 18-2 at 79.)

Defendant points to certain parts of the transcripts related to the COBRA payments. Specifically, during opening statements of the hearing, Plaintiff's counsel said the following:

> The COBRA ought to be easy.  Even if they disputed what his base salary was, which they do, there is really no dispute over what the COBRA was, which is $1,600 per month at 18 months.  So my client has spent $28,800 undisputed COBRA payments.  I think that goes to bad faith."

(Tr. (Day One) 9:9–15, Doc. 18-2 at 94.)  It should be noted, however, that Plaintiff's counsel also stated that Plaintiff "to date, has spent just over $200,000 in attorneys' fees, and over $3,000 in costs." (Tr. (Day One) 9:23–25, Doc. 18-2 at 94.)

Defendant also refers to the following exchange from the second day:

| | |
|---|---|
| Arbitrator: | The second thing was I don't know that I have heard, what was the amount of the COBRA payments you are claiming? |
| Plaintiff: | I think we claimed $30,000. |
| Arbitrator: | How much was the COBRA per month? Do you have a breakdown? |
| Mr. Dunlap (Plaintiff's Counsel): | $1,600 a month. |
| Plaintiff: | I currently pay $1,600 a month, and change.  I don't have the exact figure. |
| Mr. Dunlap: | We will have all of that in our post brief. |
| Arbitrator: | But your estimate of your total COBRA payment is around $30,000? |
| Plaintiff: | Yes. |
| Arbitrator: | And y'all will give us some detail on that? |
| Mr. Dunlap: | (Nods head affirmatively.) |
| Arbitrator: | All right. |

(Tr. (Day Two) 203:5–204:3, Doc. 18-2 at 99–100.)

On November 15, 2019, Plaintiff submitted his *Post Hearing Brief of Claimant, Bryan Troegel* ("*Plaintiff's Post-Hearing Brief*") (Doc. 18-2 at 48–57.)  Relevant here, Plaintiff stated the following with respect to his COBRA premiums:

Since his termination, Troegel has incurred between $1,591.04 and $1,664.87 in COBRA chargers per month for a total of $23,952.06 to date. If the COBRA

payments remain the same at $1,664.87 a month and do not increase again, Troegel can expect to pay an additional $14,983.83 between now and September 2020. In addition, Troegel has incurred $2,680.71 in costs and expenses, in pursuit of the severance benefits to which he is entitled.

(*Id.*, Doc. 18-2 at 55.)

On November 15, 2019, PES also submitted *Respondent's Post-Hearing Brief* (Doc. 18-2 at 58–68.) PES argued that (1) it had cause to terminate Plaintiff's employment; (2) Section 2.02 only applied to Plaintiff's position as Vice President of Marketing and not after his promotion to Senior Vice President of Operations; (3) any damages were limited to the term remaining on his contract; (4) Plaintiff was not entitled to bad faith damages or attorneys' fees under La. Civ. Code art. 1997; (5) the noncompete agreement was valid and enforceable; (6) Plaintiff's Count 3 had no merit; (7) Plaintiff violated his noncompete; and (8) Defendant was entitled to a full award plus injunctive relief. (*Id.*) Defendant did not directly address the amount owed in COBRA benefits. (*See id.*)

Additionally, on the same day at 4:56 p.m., PES sent an email to McKay complaining that Plaintiff had raised in his post-hearing brief a whistleblower claim for the first time that was "not the subject of his Demand for arbitration" and was not "arbitrable or subject to the Arbitrator's jurisdiction." (Doc. 18-2 at 69.) PES also objected to certain exhibits being submitted that were allegedly not included on his exhibit list or introduced at the hearing. (*Id.*) PES requested an "opportunity to submit a more thorough evaluation of Claimant's astounding filing and the newly raised matters, including what relief PES is entitled and/or should be accorded." (*Id.*) PES asked for thirty days to respond. (*Id.*)

Less than ten minutes later, McKay responded by email: "The Arbitrator, now having received timely briefs from each of the parties, hereby closes the hearing, thereby beginning the

time period for submission of the award in accordance with R-15 of the AAA Commercial Arbitration Rules. Thank you for your submissions." (Doc. 18-2 at 71.)

Twelve minutes later, PES responded by renewing its request for another response. (Doc. 18-2 at 72.) Defendant also made additional arguments that attorneys' fees and damages were not available under the whistleblower statute. (*Id.*) PES cited case law to this effect. (*Id.*) Defendant further referred to facts from the hearing and pointed out that Plaintiff failed to make certain necessary arguments in his post-hearing briefing. (*Id.*) PES closed by seeking a "full opportunity to respond to Mr. Troegel's newly raised whistleblower claim because, among a lack of jurisdiction and other things, it looks like Mr. Troegel took Zeke Zeringue's testimony out of context to support a whistleblower claim." (*Id.*)

A few minutes later, the Arbitrator responded, "Gentlemen: The hearing is closed under the AAA Rules. I will consider this as part of PES'[] brief, but will not reopen the hearing. Mike McKay." (Doc. 18-2 at 74.)

### 4. The Award of the Arbitrator

On December 20, 2019, McKay issued his *Award of the Arbitrator*. (Doc. 18-2 at 77– 85.) Though McKay found no viable whistleblower claim and no bad faith damages, he did find that PES breached the Employment Contract by "conditioning the payment of severance and COBRA premiums on the signing of the [Release.]" (*Id.*, Doc. 18-2 at 81–82.) The Arbitrator also invalidated the covenant not to compete. (*Id.*, Doc. 18-2 at 82.)

As to the remedies, McKay awarded a total of $658,281.47. (*Id.*, Doc. 18-2 at 85.) He awarded $515,000 in severance pay. (*Id.*, Doc. 18-2 at 83.) With respect to COBRA payments, the Arbitrator said:

> The COBRA premium payments are fairly straightforward. Claimant's Exhibit "B" lists and supports the COBRA premium payments made to date, which equals

> $23,950.06. Claimant's extrapolation in his Supplemental Brief of these payments
> to September, 2020, to add an additional $14,983.83 is reasonable. The two-year
> payment period has been set forth by Claimant is appropriate and has not been
> challenged by Respondent. Thus, the total amount of COBRA premiums due is
> $43,281.47.

(*Id.*)

With respect to attorneys' fees, McKay began by explaining that "Attorney's fees are generally not recoverable under Louisiana law unless provided for by contract or statute." (*Id.*, Doc. 18-2 at 83.) He then stated that the Employment Contract did not allow for such an award, and Plaintiff failed to recover under the whistleblower statute. (*Id.*, Doc. 18-2 at 83–84.) The Arbitrator then wrote:

> However, R-47(d) of the AAA Commercial Arbitration Rules provides in part that
> for "an award of attorney's fees if all parties have requested such an award or it is
> authorized by law or their agreement." Here, both parties requested attorney's fees,
> so such fees are authorized. Considering the finding that Respondent breached the
> Employment Agreement by not paying the severance and COBRA payments due
> upon his termination which resulted in Claimant having to hire counsel to enforce
> his rights, an award for attorney's fees will be assessed for Claimant's attorney's
> fees under R-47(d).

(*Id.*, Doc. 18-2 at 84.) The Arbitrator then cited Louisiana case law (specifically, *Molina v. Oil Field Production Contractors, Inc.*, 207-CA-0455 (La. App. 1 Cir. 12/29/17); 241 So. 3d 337) that looks to Rule 1.5 of the Rules of Professional Conduct in determining the amount. After quoting the rule,[1] McKay stated, "Here, the record is void of any direct evidence of the attorney's time and

---

[1] Specifically, *Molina* provides:

> Rule 1.5 of the Rules of Professional Conduct provides the following factors to be considered by
> the court in setting reasonable attorney fees:
> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill
> requisite to perform the legal service properly;
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will
> preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;

effort, but fees may be assessed nonetheless. [*Molina*, 241 So. 3d at 342.]  In light of these factor, Claimant is awarded attorney's fees in the amount of $100,000." (*Id.*, Doc. 18-2 at 84.)   This is half of what Plaintiff's counsel said was incurred in opening statements. (*See* Tr. (Day One) 9:23–25, Doc. 18-2 at 94.)

### C.  The Instant Motions and Boquet Evidence

On January 21, 2020, Plaintiff filed the instant *Motion to Confirm*.  Plaintiff asserts, "It has been over 30 days since the award was declared and despite requests from undersigned counsel, no payment has been made by PES." (*Mot. to Confirm* ¶ 3, Doc. 14 at 1.)  Plaintiff prays that the Court enter a judgment for the total amount of the arbitration award ($658,281.47), plus interest from October 1, 2018 until paid. (*Id.* ¶ 13, Doc. 14 at 3.)  Plaintiff also moves for an award of "attorney's fees associated with the enforcement of the arbitration award." (*Id.*)

On February 11, 2020, Defendant filed the instant *Motion to Vacate* (Doc. 18-1.)  In sum, PES argues: (1) that the award of COBRA payments should be vacated in full or at least in part because (a) the Arbitrator exceeded his authority under the Employment Contract by awarding more than eighteen months' worth of payments; (b) the Arbitrator unjustifiably refused to give PES an opportunity to respond to Plaintiff's post-hearing arguments on this issue; and (c) the COBRA benefit award was a correctable miscalculation; and (2) that the attorneys' fees award of $100,000 should be vacated because (a) McKay engaged in misconduct by administering his own brand of justice; and (b) he exceeded his authority because Louisiana substantive law governed the arbitration, and such fees are not recoverable under any contract or statute at issue. (*See id.* at

---

(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) whether the fee is fixed or contingent.

241 So. 3d at 342.

9–18.)   PES also maintains that Plaintiff's latest request for attorneys' fees to enforce the arbitration award is improper because PES's failure to pay is justified. (Doc. 23 at 8.)

Defendant also submits with the instant motion the declaration of Tyler Boquet, who is PES' Controller. (Doc. 18-2 at 102–03.)  Boquet breaks down Plaintiff's COBRA premiums for each month starting in October 2018 through the present. (*Id.* ¶ 4, Doc. 18-2 at 102–03.)  The total shown, from October 2018 to January 2020, is $25,974.74.  (*Id.*)  Boquet avers that the "COBRA premiums for the entirety of 2020 will be the same as what is shown above for January 2020, i.e. $1,708.23 total each month." (*Id.* ¶ 5, Doc. 18-2 at 103.)  Boquet also attests that PES received certain reimbursements from Troegel in the amount of $9,043.69, and this total is broken down by check number, date, and amount. (*Id.* ¶ 6, Doc. 18-2 at 103.)

Plaintiff objects to the use of Boquet's declaration.  Plaintiff notes that, on October 25, 2019, and again on October 28, 2019, before the November 4 hearing, Plaintiff's counsel emailed Defense counsel to see if he would accept service of a subpoena on behalf of certain witnesses, including Tyler Boquet. (Doc. 21-2 at 1–2.)  Defense counsel replied that he had not received a response from his client and that, "Unless you hear otherwise, please proceed as if PES does not consent." (*Id.* at 1.)  Plaintiff also submits the *Notice of Service of Subpoena* sent to opposing counsel which stated that Boquet was served with a subpoena via Fed Ex and commanded to appear at the November 4, 2019, arbitration hearing. (Doc. 21-3 at 1.)  The *Notice of Service of Subpoena* included the subpoena itself and the Fed Ex confirmation. (Doc. 21-3 at 2–4.)

As will be explained below, PES responds to this argument by stating that Plaintiff did not pay the witness fees for the subpoena.  Thus, Boquet was under no obligation to appear.

## II.    Discussion

### A.  Standard for Vacating Arbitration Awards

"The Federal Arbitration Act imposes significant limits on judicial review of [an] arbitrator's awards so that arbitration will be an 'efficient and cost-effective' alternative to litigation for the parties." *Ostrom v. Worldventures Mktg., LLC*, 160 F. Supp. 3d 942, 946 (M.D. La. 2016) (quoting *Positive Software Sols., Inc. v. New Century Mortg. Corp.*, 476 F.3d 278, 280 (5th Cir. 2007) (en banc)). "Thus, judicial review of the arbitration award is exceedingly deferential and vacatur is only available on very narrow grounds." *Id.* (citing *Brabham v. A.G. Edwards & Sons Inc.*, 376 F.3d 377, 380 (5th Cir. 2004)).  "Vacatur of an arbitrator's award is only available in the four limited circumstances listed in § 10(a) of the FAA:"

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

*Id.* (citing 9 U.S.C. § 10; *Citigroup Glob. Mkts., Inc. v. Bacon,* 562 F.3d 349, 358 (5th Cir. 2009)). Here, Defendant urges that the award of COBRA benefits and attorneys' fees should be vacated based on § 10(a)(3) (misconduct by the Arbitrator in refusing to hear evidence and in "dispens[ing] his own brand of industrial justice" (Doc. 23 at 7 (citation omitted)) and § 10(a)(4) (exceeding his authority).

### B. Parties' Arguments Regarding the COBRA Payments and Attorneys' Fees Award

Preliminarily, the Court notes that the heart of the parties' arguments are contained in the *Motion to Vacate* filings. The *Motion to Confirm* briefs largely incorporate the *Motion to Vacate* memoranda. (*See* Doc. 19, 22.) Thus, the Court will focus on the *Motion to Vacate*.

### 1. Defendant's Memorandum in Support of its Motion to Vacate (Doc. 18-1)

Defendant urges that, with respect to the COBRA premiums, the Arbitrator exceeded his authority and engaged in misconduct by not giving it an opportunity to respond to arguments first made by Plaintiff in post-hearing briefing. PES next argues that McKay exceeded his authority in awarding two years of COBRA benefits rather than eighteen months. According to PES, the Employment Contract clearly limited the Arbitrator's power because Section 2.02 of that contract incorporates federal law on this issue, and COBRA only allows an award of up to eighteen months. The Arbitrator's sole basis for this award was Defendant's accession to the argument, but Defendant did not accede; rather, the Arbitrator did not allow Defendant an opportunity to respond to the argument. Defendant was consistent in the arbitration hearings on this point. Defendant did not brief the issue initially because, from its view, there were no contested issues on this point if the premiums were awardable, and PES did not respond to Plaintiff's post-hearing brief because it was not allowed. The Arbitrator prejudiced Defendant by not giving it an opportunity to respond. Because of Petitioner's "last-minute sleight of hand in claiming two years of COBRA payments, and because of the Arbitrator's resulting misconduct, [Defendant] further prays [Petitioner] not be awarded anything for COBRA payments." (Doc. 18-1 at 13 (citation omitted).) Alternatively, Defendant prays that the COBRA award be reduced to eighteen months.

Defendant also argues that the award of attorneys' fees is "outlandish" and contrary to the express provisions of the arbitration clause in the Employment Contract. Louisiana allows attorneys' fees only if allowed by statute or by contract, and, here, neither authorizes such an award. Further, the sole basis was the American Arbitration Association's Commercial Arbitration Rules and Mediation Procedures ("AAA Rules"), and such an award is also not allowed under those rules under the circumstances. The Arbitrator's basis for awarding attorneys' fees also had no basis in law, as Plaintiff could not obtain attorneys' fees for bad faith damages under Article 1997 of the Louisiana Civil Code. Here, the Arbitrator dispensed his own brand of justice without any evidentiary basis, so the attorneys' fees award should be vacated.

## 2. Plaintiff's Opposition to the Motion to Vacate (Doc. 21)

Plaintiff responds that Defendant has not paid "a dime of the undisputed portion of the award" and "continues to pummel [him] with dilatory litigation tactics making it prohibitively expensive for [him] to prosecute his claims." (Doc. 21 at 1.) After reiterating the narrow grounds for overturning an arbitration award, Plaintiff argues there was no misconduct. Plaintiff gave notice of the numbers he was seeking, and Defendant had an opportunity to provide supplementary arguments by email but did not mention the COBRA benefits. Further, Plaintiff did not demand COBRA premiums for eighteen months, as argued by PES. Moreover, Defendant did not make an offset claim of COBRA premiums in the arbitration.

Plaintiff hotly disputes the use of the Boquet declaration to obtain a credit for COBRA payments. Plaintiff explains how he tried to subpoena Boquet for the arbitration hearing, but Boquet and other employees did not appear on the grounds that there was no witness fee tendered. But witness fees are not required under the AAA Rules. Thus, Plaintiff is being sandbagged.

Plaintiff also argues that McKay did not exceed his authority. Claims that the arbitrator misunderstood the law, misread the contract, or made an arbitrary ruling are not grounds to vacate or modify an award. (Doc. 21 at 6 (citing *Kergosien v. Ocean Energy, Inc*., 390 F.3d 346, 356 (5th Cir. 2004).) Thus, the award must be upheld.

Similarly, the Arbitrator has the power to interpret the arbitration rules, so that is also not a ground for vacating the attorneys' fee award. Under the AAA Rules, attorneys' fees are allowed if all parties request such an award, and, here, they did. The attorneys' fee award is also entitled to deference, particularly where it is below the requested amount. Any excess to the award is the result of Defendant's dilatory tactics.

Plaintiff next contends that Defendant's attempt to modify the award is untimely. Such a request must be made 20 days after transmittal if the party believes there was a computation error, and, here, Defendant did not do so within that time frame.

### 3. Defendant's Reply (Doc. 23)

Defendant responds that this case is about whether the Arbitrator exceeded his authority, and "[t]he answer is yes!" (Doc. 23 at 1.) "The arbitrator awarded COBRA premiums and attorney fees that he had no power to award." (*Id.*) There is no contract or law allowing these awards. To the contrary, the law and contract do not allow these.

As to the award of attorneys' fees, the Employment Contract requires that Louisiana substantive law apply, and, under that law, such fees are only allowed if there is a contract or law providing for such. The AAA Rules are not statutes and merely control how the arbitration is "conducted." In any event, the AAA Rules state that the parties can vary the procedures by written agreement, and, here, the Employment Contract requires the application of Louisiana law.

16

Similarly, the COBRA award should be vacated, as federal and state law do not allow twenty-four months of COBRA premiums to be awarded. Further, as to Plaintiff's argument about an opportunity to respond, (1) McKay did not initially accept supplemental arguments; and (2) Defendant only had a few minutes between reviewing Petitioner's post-hearing briefs and seeking additional time, which is not enough time to respond to all of its objections, particularly in light of more serious arguments raised. Additionally, the amount of premiums was not at issue; rather, the length of time that Plaintiff could receive them was, and at all times during the arbitration hearing, Plaintiff only sought payment for eighteen months. Defendant also notes that the fact that Bouquet did not appear at the arbitration hearing "is of no importance" and that, in any event, witness fees are required by federal law.

Finally, the deadline for filing a motion to vacate is three months after the award is delivered under 9 U.S.C. § 12. Here, the motion was timely, and nothing in AAA Rule 50 changes that.

### C. Section 10(a)(3): Misconduct of the Arbitrator

#### 1. Applicable Law

An arbitrator's award may be vacated "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced" *Ostrom*, 160 F. Supp. 3d at 946 (citing 9 U.S.C. § 10(a)(3)). "The Arbitrator has 'broad discretion to make evidentiary decisions.' " *Id*. at 949 (quoting *Int'l Chem. Workers Union v. Columbian Chems. Co.*, 331 F.3d 491, 497 (5th Cir. 2003)). "The evidentiary decision in question must have 'so affected [the party's] rights . . . that it may be said he was

deprived of a fair hearing.' " *Id.* (quoting *Forsythe Int'l, S.A. v. Gibbs Oil Co. of Tex.*, 915 F.2d

1017, 1023 (5th Cir. 1990) (citations omitted)).  Further, as the Western District has explained:

> "As a speedy and informal alternative to litigation, arbitration resolves disputes
> without confinement to many of the procedural and evidentiary strictures that
> protect the integrity of formal trials. Parties to voluntary arbitration may not
> superimpose rigorous procedural limitations on the very process designed to avoid
> such limitations. The informal nature of arbitration proceedings effectuates the
> national policy favoring arbitration, and such proceedings require expeditious and
> summary hearing, with only restricted inquiry into factual issues." [*Forsythe*, 915
> F.2d at 1022] (internal citations and quotations omitted).
>
> "An 'arbitrator is not bound to hear all of the evidence tendered by the parties. . . .
> [He] must give each of the parties to the dispute an adequate opportunity to present
> its evidence and arguments.' " It is appropriate to vacate an arbitral award if the
> exclusion of relevant evidence deprives a party of a fair hearing. "Every failure of
> an arbitrator to receive relevant evidence does not constitute misconduct requiring
> vacatur of an arbitrator's award. A federal court may vacate an arbitrator's award
> only if the arbitrator's refusal to hear pertinent and material evidence prejudices the
> rights of the parties to the arbitration proceedings." *Karaha Bodas Co., L.L.C. v.
> Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 300–
> 301 (5th Cir. 2004). Arbitrators need not provide reasons for their award and, if the
> award is rationally inferable from the facts before the arbitrators, it must be
> affirmed. *Valentine Sugars, Inc. v. Donau Corp.*, 981 F.2d 210, 214 (5th Cir. 1993).

*Rent-A-Ctr., Inc. v. Barker*, 633 F. Supp. 2d 245, 252–53 (W.D. La. 2009).

### 2. Analysis

Having carefully considered the matter, the Court finds that Defendant is not entitled to

relief under § 10(a)(3).  Defendant complains that Plaintiff engaged in a "sleight of hand" (Doc.

23 at 5) by making it seem as though he was only seeking eighteen months' worth of payments,

but the Court rejects this argument for several reasons.

First, the Court has reviewed Plaintiff's *Demand for Arbitration* and finds that he never

represented that he was seeking only eighteen months of COBRA payments. To the contrary, as

Plaintiff asserts, when the *Demand for Arbitration* refers to eighteen months of COBRA payments,

it does so in reference to the Release, a document which Plaintiff refused to sign as being contrary

to the Employment Contract.  (*Demand for Arbitration* ¶¶ 12–13, Doc. 18-2 at 14.)   Indeed, in the *Demand for Arbitration*, Plaintiff prayed for, *inter alia*, an order for PES "to pay to Troegel the severance benefits and COBRA premiums as set forth in Section 2.02 of the Employment Contract[.]" (*Id.*, Doc. 18-2 at 16–17.)   Thus, the *Demand for Arbitration* never limited Plaintiff's COBRA payments to eighteen months.

Second, the Court has reviewed the transcript of the hearing, and this too does not support Defendant's position.  Plaintiff's counsel said in his opening statement, "So my client has spent $28,800 undisputed COBRA payments.  I think that goes to bad faith."  (Tr. (Day One) 9:13–15, Doc. 18-2 at 94.)  This does not appear to be a binding, definitive assessment of all COBRA payments owed.  Further, regardless of what was said in the opening statement, the Arbitrator had the following exchange with Plaintiff and his attorney during the hearing:

Arbitrator:          The second thing was I don't know that I have heard, what was the amount of the COBRA payments you are claiming?

Plaintiff:            I think we claimed $30,000.

Arbitrator:          How much was the COBRA per month? Do you have a breakdown?

Mr. Dunlap (Plaintiff's Counsel):     $1,600 a month.

Plaintiff:            I currently pay $1,600 a month, and change.  I don't have the exact figure.

Mr. Dunlap:          We will have all of that in our post brief.

Arbitrator:          But your estimate of your total COBRA payment is around $30,000?

Plaintiff:            Yes.

Arbitrator:          And y'all will give us some detail on that?

Mr. Dunlap:          (Nods head affirmatively.)

19

Arbitrator:            All right.

(*See* Tr. (Day Two) 203:5–204:3, Doc. 18-2 at 99–100.)  Thus, Plaintiff was only providing an *estimate* of the COBRA payments, and his attorney clearly stated that more detail would be provided in the post-hearing briefs.  Defendant simply cannot argue that it had no reason to address the COBRA payments in its own post-hearing briefing.

Third, even if Plaintiff had raised a new issue related to COBRA payments in post-hearing briefs, Defendant was given an opportunity to respond.  Specifically, after post-hearing briefs were filed, Defendant submitted a lengthy email to McKay voicing his problems with the whistleblower claim and his objections to new exhibits. (Doc. 18-2 at 69.)  Following McKay's response that briefing was closed (Doc. 18-2 at 71), defense counsel sent a *second* email detailing further arguments about the whistleblower claim (Doc. 18-2 at 72).  McKay responded to this email by stating that he would "consider this as part of PES' brief, but [would] not reopen the hearing." (Doc. 18-2 at 74).  Thus, the Arbitrator did not engage in misconduct by denying Defendant an opportunity to respond.

In sum, the Court rejects Defendant's § 10(a)(3) argument.  Plaintiff never definitively conceded before or during the arbitration hearing that his COBRA payments were limited to eighteen months, so Defendant should have addressed the issue in post-hearing briefing.  Further, even if these arguments were new, Defendant had *two* opportunities to raise its COBRA arguments with the Arbitrator after the submission of post-hearing briefs, and PES failed to do so.

Again, the Arbitrator "must give each of the parties to the dispute an adequate opportunity to present its evidence and arguments." *Rent-A-Ctr*, 633 F. Supp. 2d at 252–53.  But "[p]arties to voluntary arbitration may not superimpose rigorous procedural limitations on the very process designed to avoid such limitations. The informal nature of arbitration proceedings effectuates the

20

national policy favoring arbitration, and such proceedings require expeditious and summary hearing, with only restricted inquiry into factual issues." *Id.* at 252. McKay had "broad discretion to make evidentiary decisions." *Ostrom*, 160 F. Supp. 3d at 949. PES must show that "[t]he evidentiary decision in question . . . so affected [its] rights . . . that it may be said [it] was deprived of a fair hearing." *Id.* (citation omitted). Under the circumstances, the Court finds that McKay did not abused his broad discretion, and certainly not to the point where Defendant was deprived of a fair hearing. As a result, PES' motion on this issue will be denied.

### D. Section 10(a)(4): Exceeding the Arbitrator's Powers

#### 1. Applicable Law

"Under § 10(a)(4), a court may vacate an arbitration award 'where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.' " *Ostrom*, 160 F. Supp. 3d at 951 (quoting 9 U.S.C. § 10(a)(4)). "The requirements of finality and definiteness are ones more of form than of substance." *Rent-A-Ctr,* 633 F. Supp. 2d at 253. " 'They must not be confused with whether the arbitrators' award was correct or even reasonable, since neither error nor clear error nor even gross error is a ground for vacating an award.' " *Id.* (citing *IDS Life Ins. v. Royal Alliance*, 266 F.3d 645, 650 (7th Cir. 2001)). "Courts may not vacate an arbitration award based on mere errors on the interpretation or application of the law, nor on mistakes in fact-finding." *Id.* at 253–54 (citing *United Paperworkers Intern. Union, AFL–CIO v. Misco, Inc*., 484 U.S. 29, 38, 108 S. Ct. 364, 98 L. Ed. 2d 286 (1987)).

"When a party challenges an arbitrator's interpretation of a contract under § 10(a)(4), it is not enough to show that the arbitrator 'committed an error—or even a serious error.' " *Ostrom*, 160 F. Supp. 3d at 951 (quoting *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp*., 559 U.S. 662, 671,

130 S. Ct. 1758, 176 L. Ed. 2d 605 (2010)). "An arbitral decision 'even arguably construing or applying the contract' must stand, 'regardless of a court's view of its (de)merits.' " *Id.* (quoting *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2068, 186 L. Ed. 2d 113 (2013)). "Accordingly, a district court's review of an arbitrator's award under § 10(a)(4) is limited to the 'sole question . . . [of] whether the arbitrator (even arguably) interpreted the parties' contract.' " *Id.* at 951–52 (quoting *BNSF R. Co. v. Alstom Transp., Inc.*, 777 F.3d 785, 788 (5th Cir. 2015) (quoting *Oxford Health*, 133 S. Ct. at 2068)).

"In determining whether the arbitrator interpreted the contract, district courts should consult the arbitrator's award itself for relevant evidence, as well as the submission of the issue to the arbitrator to determine his authority." *Ostrom*, 160 F. Supp. 3d at 952 (citing *OMG, L.P. v. Heritage Auctions*, Inc., 612 F. App'x 207, 210 (5th Cir. 2015); *BNSF*, 777 F.3d at 788). "The Fifth Circuit has described several factors that indicate whether an arbitrator was arguably interpreting the underlying contract: '(1) whether the arbitrator identifies her task as interpreting the contract; (2) whether she cites and analyzes the text of the contract; and (3) whether her conclusions are framed in terms of the contract's meaning.' " *Id.* (quoting *BNSF*, 777 F.3d at 788). "The district court must keep in mind, however, that in evaluating the available evidence district courts 'must resolve all doubts in favor of arbitration.' " *Id.* (quoting *BNSF*, 777 F.3d at 788; *Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1320 (5th Cir. 1994)).

Ultimately, "[t]he party challenging an arbitrator's award under § 10(a)(4) carries a 'heavy burden.'" *Ostrom*, 160 F. Supp. 3d at 951 (quoting *BNSF*, 777 F.3d at 788 (quoting *Oxford Health*, 133 S. Ct. at 2068)). As the Western district explained:

> [M]isapplication of the law is not grounds for vacating an arbitration award under the FAA. "Federal courts do not superintend arbitration proceedings. Our review is restricted to determining whether the procedure was fundamentally unfair." *Teamsters, Chauffeurs, Warehousemen, Helpers and Food Processors, Local*

*Union 657 v. Stanley Structures, Inc.,* 735 F.2d 903 (5th Cir. 1984); *See also,* [*Forsythe,* 915 F.2d at 1020] ("In reviewing the district court's vacatur, we posit the . . . question . . . whether the arbitration proceedings were fundamentally unfair"); *Robbins v. Day,* 954 F.2d 679, 685 (11th Cir. 1992) ( "[T]he Federal Arbitration Act allows arbitration to proceed with only a summary hearing and with restricted inquiry into factual issues"), cert. denied, 506 U.S. 870, 113 S. Ct. 201, 121 L. Ed. 2d 143 (1992).

*Rent-A-Ctr.*, 633 F. Supp. 2d at 257.

### 2. Analysis

Having carefully considered the matter, the Court finds that Defendant is not entitled to vacatur under § 10(a)(4).  The Court will address each issue in turn.

### a.  COBRA Payments

With respect to the COBRA benefits, again, Section 2.02 of the Employment Contract provided in relevant part:

> [S]hould Company terminate the Agreement without cause, Company shall pay to Employee a lump sum severance equal to twice the Employee's base annual salary and will pay to or on behalf of Employee COBRA premiums as regards health insurance up until such time as required by applicable state or federal law.

(Doc. 18-2 at 3.)  Defendant frames his argument in terms of McKay exceeding his authority by awarding more than was "required by applicable . . . federal law," but, in essence, Defendant has only argued errors of law, namely that McKay awarded twenty-four months of COBRA premiums when, as a matter of federal law, Plaintiff was only eligible for eighteen.  As amply demonstrated above, errors of fact or law, even serious ones, are not grounds for vacating the arbitration award. *See Ostrom*, 160 F. Supp. 3d at 951; *Rent-A-Ctr,* 633 F. Supp. 2d at 253.

Again, "[a]n arbitral decision 'even arguably construing or applying the contract' must stand, 'regardless of a court's view of its (de)merits.' " *Ostrom*, 160 F. Supp. 3d at 951 (quoting *Oxford Health*, 133 S. Ct. at 2068), and, here, it is clear that McKay was "arguably construing or applying the contract."  In making its award, the Arbitrator wrote:

The COBRA premium payments are fairly straightforward. Claimant's Exhibit "B" lists and supports the COBRA premium payments made to date, which equals $23,950.06. Claimant's extrapolation in his Supplemental Brief of these payments to September, 2020, to add an additional $14,983.83 is reasonable. The two-year payment period has been set forth by Claimant is appropriate and has not been challenged by Respondent. Thus, the total amount of COBRA premiums due is $43,281.47.

(*Award of Arbitrator*, Doc. 18-2 at 83.) Looking at the above three factors, McKay "identifies [his] task as interpreting the contract" throughout the *Award of the Arbitrator*, cites and analyzes the text of the Employment Contract, and his "conclusions are framed in terms of the contract's meaning." *See Ostrom*, 160 F. Supp. 3d at 952. In short, PES falls short of its burden.

The Court must also reject Defendant's reliance on the Boquet declaration. Putting aside the temerity of Defense counsel refusing to accept service of the subpoenas, complaining about the failure to pay for the fees, and then attempting to use that witness *after* the arbitration to escape payment of a certain (relatively small) portion of the award, the Court must decline to consider Boquet's declaration for the simple reason that "the Court lacks power under the FAA and Arbitration Agreement to receive evidence and award additional monetary relief outside of the Arbitrator's Award." *Rent-A-Ctr.*, 633 F. Supp. 2d at 258. Thus, the Court declines to consider this new evidence.

The Court also notes that, while Defendant has cited to a regulation stating that terminated employees are only entitled to eighteen months of COBRA payments—26 C.F.R. 54.4980B-7[2]—

---

[2] Defendant refers to the following:

Q–4: When does the maximum coverage period end?

A–4: . . . (c) In the case of a qualifying event that is a termination of employment or reduction of hours of employment, the maximum coverage period ends 18 months after the qualifying event if there is no disability extension, and 29 months after the qualifying event if there is a disability extension. See Q&A–5 of this section for rules to determine if there is a disability extension. If there is a disability extension and the disabled qualified beneficiary is later determined to no longer be disabled, then a plan may terminate the COBRA continuation coverage of an affected qualified beneficiary before the end of the disability extension; see paragraph (a)(6) in Q&A–1 of this section.

Defendant does so in a conclusory way and provides almost no evidence *from the arbitration hearing* or analysis that the eighteen-month period is applicable (as opposed to one of the other periods in the regulation). Without more, Defendant has not met his burden of vacating the arbitration award.

In sum, given the "heavy burden" that a party faces to vacate an arbitration award, and given the fact that "courts must resolve all doubts in favor of arbitration," *Ostrom*, 160 F. Supp. 3d at 951, 952 (citations and quotations omitted), the Court finds that PES has not demonstrated that McKay exceeded his authority to the point that the proceedings were "fundamentally unfair," *Rent-A-Ctr.*, 633 F. Supp. 2d at 257. For this reason, the Court must affirm the COBRA payment award.

### b. Attorneys' Fee Award

The same result is warranted for the award of attorneys' fees. The Employment Contract clearly states:

> The arbitration . . . shall be conducted under the Commercial Arbitration Rules of the American Arbitration Association in effect at the time that the demand for arbitration hereunder is made. Louisiana substantive law shall apply.

(*Employment Contract*, Doc. 18-2 at 4.) After acknowledging that attorneys' fees were not recoverable under Louisiana law, the Arbitrator then applied the AAA Rules in awarding fees:

> However, R-47(d) of the AAA Commercial Arbitration Rules provides in part that for "an award of attorney's fees if all parties have requested such an award or it is authorized by law or their agreement." Here, both parties requested attorney's fees, so such fees are authorized. Considering the finding that Respondent breached the Employment Agreement by not paying the severance and COBRA payments due upon his termination which resulted in Claimant having to hire counsel to enforce his rights, an award for attorney's fees will be assessed for Claimant's attorney's fees under R-47(d).

---

26 C.F.R. 54.4980B-7

(*Award of Arbitrator*, Doc. 18-2 at 84.)  There is little serious dispute that R-47(d) says what is represented or that both parties in fact requested attorneys' fees.  (*Answer*, Doc. 18-2 at 23; *Demand for Arbitration*, Doc. 18-2 at 17.)

Instead, Defendant resorts to legal gymnastics.  The fact that Louisiana substantive law applies, says Defendant, trumps the application of the AAA Rules.  And, argues PES, R-47(d) must be read in the context of R-47(a), which limits relief to what is "within the scope of the agreement of the parties[.]"  Further, according to Defendant, the parties only said that the arbitration would be "conducted" according to the AAA rules, which means they agreed to the procedural aspects of the AAA Rules but not the substantive ones, which are governed by Louisiana law.

But Defendant does not cite a single case supporting these propositions, much less one that would overcome the general rules that (1) "[m]isapplication of the law is not grounds for vacating an arbitration award under the FAA," *Rent-A-Ctr.*, 633 F. Supp. 2d at 257, and (2) "[a]n arbitral decision 'even arguably construing or applying the contract' must stand, 'regardless of a court's view of its (de)merits.' " *Ostrom*, 160 F. Supp. 3d at 951.  McKay was certainly "arguably applying" the Employment Agreement by applying R-47(d) to award attorneys' fees when both parties requested such an award.  Without more, Defendant has failed to meet his "heavy burden" for vacating the attorneys' fees award.

Indeed, though not required to affirm the arbitration award, the Court agrees with the Arbitrator's interpretation and application of R-47(d)(ii).  Again, this rule provides, "(d) The award of the arbitrator(s) may include: . . . ii. an award of attorneys' fees if all parties have requested such an award or it is authorized by law or their arbitration agreement."  R-47 thus clearly contemplates two scenarios: (1) where the parties both request such a reward, and (2) where the

26

award is "authorized by law or their arbitration agreement." *Id.* Defendant essentially seeks to invalidate the first part by only allowing attorneys' fees awards where the substantive law or agreement allows it. This would contravene the Employment Agreement itself, which states that the arbitration would be conducted by the AAA Rules. For all these reasons, the Court agrees with the Arbitrator's decision on this issue.

Defendant also objects that McKay violated the public policy of Louisiana by awarding attorneys' fees in the absence of a contract or statute and simply because Plaintiff had "to hire counsel to enforce his rights." (*Award of Arbitrator*, Doc. 18-2 at 84.) Defendant says that this would lead to attorneys' fees awards in any breach of contract cases.

The Court rejects this argument as well. McKay's decision would not lead to fee awards in every case; it only authorizes fee awards in cases like this one—where the parties agreed to abide by the AAA Rules, where both parties requested attorneys' fees, and where, consequently, R-47(d) applies to authorize such an award.

Defendant also complains about the fact that McKay based his award without any clear evidence in the record or legal basis. But "Arbitrators need not provide reasons for their award and, if the award is rationally inferable from the facts before the arbitrators, it must be affirmed." *Rent-A-Ctr.*, 633 F. Supp. 2d at 252–53 (citing *Valentine Sugars*, 981 F.2d at 214). Here, the award is rationally inferable from the *Award of the Arbitrator*, which recounts the history of the case in state and federal court (from which the Court can reasonably infer that the Arbitrator was aware of the mediation and failed settlement attempt) and procedural history in arbitration, including Defendant's multiple efforts to get expanded discovery. (Doc. 18-2 at 78–79.) As Plaintiff's counsel argued in briefing:

> The attorneys' fee award by the Arbitrator covers fees related to negotiations with PES prior to litigation, filing suit in State Court, PES' removal of the litigation to

Federal Court, mediation, negotiations of the terms of a failed settlement agreement in light of the mediation, and defending Troegel's rights in response to cease and desist letters from PES designed to prevent Troegel from gainful employment, and arbitration, which included multiple submissions, discovery, and the arbitration hearing itself. In addition, through the course of arbitration counsel was required to defend Troegel from PES' attempts to unnecessarily continue the arbitration hearing and compel extensive discovery.

From the beginning, PES' actions have been designed to delay the proceedings, drive up costs and fees, and make it prohibitively expensive for Troegel to prosecute his claims.

(Doc. 21 at 8.) The Court agrees that most of this is "rationally inferable from the facts before the arbitrator," so the attorneys' fees award must be affirmed. *Rent-A-Ctr.*, 633 F. Supp. 2d at 252–53.

There was also a legal basis for the attorneys' fee award. *Molina* specifically lists Rule 1.5 as a guide for assessing fees and specifically states, "[w]here the record does not detail time and costs of an attorney's services, the court may nonetheless fix the fee." *Molina*, 241 So. 3d at 342 (citing *Chesterfield v. Genesis Hospice, L.L.C.*, 13-0179 (La. App. 1 Cir. 12/19/13); 137 So. 3d 22, 25). And "deference" to an attorneys' fees award "seems particularly appropriate [where] . . . the arbitrator[] awarded an attorneys' fee amount well below [Plaintiff's] request[.]" *Wells Fargo Advisors, LLC v. Watts*, 540 F. App'x 229, 232 (4th Cir. 2013) (per curiam).

Again, Defendant faces a "heavy burden," and "courts must resolve all doubts in favor of arbitration." *Ostrom*, 160 F. Supp. 3d at 951, 952 (citations and quotations omitted). Applying this standard, the Court simply cannot find from the *Award of the Arbitrator* that McKay misapplied the facts or the law to such an extent as to render the proceedings "fundamentally unfair." *Rent-A-Ctr.*, 633 F. Supp. 2d at 257. Defendant's motion on this issue is thus denied.

### E.  Section 11(a): Miscalculation of the Cobra Figures

#### 1. Parties' Arguments

Defendant also points to § 11(a) as a basis for modifying the COBRA payment award. Plaintiff responds that this request is untimely under AAA Commercial Rule 50, which requires that parties request a modification of an award within 20 days of transmittal of same.

#### 2. Applicable Law

"Under the Federal Arbitration Act, awards may be modified, but only in the event of 'an evident material miscalculation of figures.' " *Prestige Ford v. Ford Dealer Computer Servs., Inc*., 324 F.3d 391, 396–97 (5th Cir. 2003), *abrogated on other grounds by Hall St. Assocs., L.L.C. v. Mattel, Inc*., 552 U.S. 576, 128 S. Ct. 1396, 170 L. Ed. 2d 254 (2008) (quoting 9 U.S.C. § 11(a)). The Fifth Circuit "has previously noted that an 'evident material calculation' occurs 'where the record that was before the arbitrator demonstrates an unambiguous and undisputed mistake of fact and the record demonstrates strong reliance on that mistake by the arbitrator in making his award.' " *Id.* at 396–97 (quoting *Valentine Sugars*, 981 F.2d at 214 (citing *National Post Office v. United States Postal Service*, 751 F.2d 834, 843 (6th Cir. 1985))). The Fifth Circuit also "interpret[s] the term 'undisputed' to mean [the Court] should look to see whether there is any rational basis for disputing the truth of the fact." *Valentine Sugars*, 981 F.2d at 214 (citing *Anderman/Smith Co. v. Tennessee Gas Pipeline Co.*, 918 F.2d 1215, 1218 (5th Cir. 1990) (award must at least be rationally inferable from the agreement)).  "Arbitrators need not provide reasons for their award. If the award is rationally inferable from the facts before the arbitrator, we must affirm the award." *Id.* (internal citations omitted).

### 3. Analysis

The Court rejects Defendant's request for modification under § 11(a).  The Court finds that there was no "unambiguous and undisputed mistake of fact" and that there was a "rational basis for disputing the truth of the fact."

Specifically, McKay ordered two years of COBRA payments in part because Defendant had not challenged this calculation. (*Award of Arbitrator*, Doc. 18-2 at 83.)  There is a rational basis for this position as a matter of fact and law.  "The Fifth Circuit makes it clear that when a party does not address an issue in his brief to the district court, that failure constitutes a waiver on appeal." *Magee v. Life Ins. Co. of N. Am.*, 261 F. Supp. 2d 738, 748 n.10 (S.D. Tex. 2003); *see also United States v. Reagan*, 596 F.3d 251, 254–55 (5th Cir. 2010) (defendant's failure to offer any "arguments or explanation . . . is a failure to brief and constitutes waiver").  Here, by its own admission, PES did not address the COBRA payment in its post-hearing briefs.  (*See* Doc. 18-1 at 12 ("From PES's vantage point, when drafting the post-hearing brief, there were no issues needing to be contested relating to the amount of the award for COBRA premiums, should such be awardable. Because of that, PES did not even discuss the issue of COBRA premiums in its post-hearing brief.").  Later, Defendant in fact presented *two* supplemental emails to the Arbitrator, both of which were considered by him, but neither of which addressed the COBRA payments. (Doc. 18-2 at 69–74.)  Thus, there was a rational basis for McKay to conclude that Defendant had waived this issue and to award twenty-four months of COBRA payments to Plaintiff.  For these reasons, and for the reasons given in the § 10(a)(4) section, Defendant's motion to modify the award under § 11(a) is denied.

### F.  The *Motion to Confirm*

"[T]he statutory language means what it says: 'courts *must* [confirm the award] unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title,' and there's nothing malleable about 'must,' " *Rent-A-Ctr.*, 633 F. Supp. 2d at 249 (quoting *Citigroup Glob. Mkts.*, 562 F.3d at 358 (quoting 9 U.S.C. § 9 (emphasis added) and citing *Hall Street Assocs., L.L.C. v. Mattel, Inc*., 552 U.S. 576, 128 S. Ct. 1396, 1405, 170 L. Ed. 2d 254 (2008))).  As explained above, Defendant has not met its burden of establishing that the *Award of the Arbitrator* should be "vacated, modified, or corrected" under § 10 or § 11.  Consequently, the Court must grant the *Motion to Confirm* and enter an order confirming the award.

### G.  Attorneys' Fees for Bringing the *Motion to Confirm*

Plaintiff  finally argues that he is entitled to $17,820 dollars in attorneys' fees for the expenses incurred in trying to confirm the arbitration award.  Plaintiff argues that "PES has unjustifiably refused to abide by the arbitral award. Judicial enforcement of this arbitration awards should not have been necessary." (Doc. 21 at 9.)  According to Plaintiff, PES had no basis to dispute the Arbitrator's award.  Plaintiff then engages in the lodestar method to calculate such fees.

Defendant responds that Plaintiff's award of attorneys' fees should be denied.  "As shown by PES's motion to vacate, PES has substantial justification to refuse to abide by the Award of Arbitration." (Doc. 23 at 8.)

"A party to an arbitral award is not entitled to the attorney's fees it incurs in enforcing that award unless the noncomplying party's refusal to abide by the award was without justification." *Glover v. IBP, Inc*., 334 F.3d 471, 477 (5th Cir. 2003) (quoting *Amalgamated Meat Cutters, Local 540 v. Great Western Food Co.*, 712 F.2d 122, 125 (5th Cir. 1983)).  In analyzing this issue, the

Fifth Circuit has denied an award of fees where the challenger's position was " 'not a frivolous one.' " *Id.* (quoting *Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1331 (5th Cir. 1994)).

Having carefully considered the matter, the Court will decline to award Plaintiff's additional attorneys' fees. While the Court has serious problems with the fact that Defendant did not pay the undisputed portion of the award, the Court cannot say that PES' arguments in the *Motion to Vacate* objecting to a significant amount of that award (over $100,000) were "frivolous one[s]." As a result, Plaintiff's request for additional attorneys' fees will be denied.

### III.    Conclusion

Accordingly,

**IT IS ORDERED** that the *Motion to Vacate, Modify, and/or Correct Arbitration Award* (Doc. 18) filed by Defendant Performance Energy Services, LLC, is **DENIED;** and

**IT IS FURTHER ORDERED** that the *Motion to Lift Stay, Confirm Arbitration Award and Enter Judgment in favor of Troegel* (Doc. 14) filed by Plaintiff Bryan Troegel is **GRANTED IN PART** and **DENIED IN PART.**  The motion is **DENIED** with respect to Plaintiff's request for additional attorneys' fees incurred in the enforcement of the arbitration award. In all other respects, the motion is **GRANTED**. The Court confirms the arbitration award in full and will enter a judgment in Plaintiff's favor in the amount of $658,281.47, plus legal interest until paid.

Signed in Baton Rouge, Louisiana, on <u>July 30, 2020</u>.


_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**